UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY PEARSON, | Civil Action No. 18-16198 (SDW) |
| Plaintiff, | |
| v. | OPINION |
| DR. FLORA DEFILIPPO, et al., | |
| Defendants. | |

**WIGENTON**, District Judge:

This matter comes before the Court on the motion for summary judgment filed in this matter by Defendant Harold Goldstein. (ECF No. 59). Despite the passage of several months, Plaintiff did not file opposition to the motion, although he did file a request for the appointment of counsel which makes no direct mention of the summary judgment motion. (ECF No. 61). For the reasons expressed below, Defendant Goldstein's motion is granted, and Petitioner's application is denied.

## I. BACKGROUND

The following facts are drawn from Defendant Goldstein's statement of material facts, which is considered unopposed and admitted for the purposes of this Opinion as Plaintiff failed to file opposition to that statement. In April 2016, Plaintiff was convicted of aggravated assault and sentenced to nine years imprisonment. (Document No. 2 attached to ECF No. 59 at 2). Upon first entering the New Jersey state prison system, Plaintiff underwent an intake interview during which he failed to report any history of psychiatric treatment. (*Id.*). Plaintiff also received an intake psychological evaluation during which Plaintiff showed no indications of suicidal ideation,

hallucinations, or symptoms of serious depression or anxiety. (*Id.* at 3). While the examining physician did note some signs of depression, Plaintiff was found not to present a risk of harm to himself or others. (*Id.*). Plaintiff was thus cleared for placement in a general population prison unit, but was placed on the special needs roster so that he could receive mental health treatment. (*Id.*). Specifically, inmates placed on the roster are seen by mental health clinicians biweekly. (*Id.*).

Plaintiff was thereafter moved to Bayside State Prison, and in May 2016, was prescribed medication including Vistaril and Prozac to help him manage his depression while undergoing treatment. (*Id.* at 3-4). In August 2016, at least partially at Plaintiff's own request, Plaintiff ceased taking or being prescribed either of those two medications as Plaintiff felt they were no longer necessary to help him adjust to prison life. (*Id.* at 4). Plaintiff was thereafter transferred to South Woods State Prison in September 2016, where he continued to undergo biweekly mental health sessions with prison clinicians. (*Id.*). In October 2016, Plaintiff reported that he was "doing well," that he no longer had depressive or psychotic symptoms, and felt that he "didn't need" his medication any longer. (*Id.*). Despite this apparent improvement, mental health officials determined that Plaintiff should continue biweekly treatment sessions for three additional months in November 2016, with the ultimate goal of discharging Plaintiff from the special needs roster if he continued to be stable without medication and seemed well adjusted to prison life. (*Id.* at 4-5).

Plaintiff was thereafter transferred to Northern State Prison on November 15, 2016. (*Id.* at 5). Beginning on December 2, 2016, Plaintiff began to be seen by Defendant Rebecca Jankowitz[1] for his biweekly treatment sessions. Following this session, Ms. Jankowitz reported that Plaintiff

---

[1] Although named as a Defendant in this matter, Plaintiff failed to effectuate service as to Ms. Jankowitz. (*See* ECF No. 16). Ms. Jankowitz thus has no involvement with the instant motion.

spent most of his time complaining about the incidents of prison life – including missing property or issues with his cellmate – but did not report any mental health issues or need for further medication, leading Ms. Jankowitz to conclude that Plaintiff was adjusting to prison life and did not have any acute psychiatric symptoms. (*Id.*). Plaintiff continued to deny mental health issues in follow-up sessions with Jankowitz on December 12 and 28, and instead continued to use his sessions to vent his frustrations about being a prisoner. (*Id.* at 5-6). Plaintiff continued to report no mental health symptoms or issues in sessions on January 11 and 23, as well as during his session on February 8, and continued to use these sessions to discuss his issues with day to day prison life.

On February 17, 2017, Jankowitz saw Plaintiff for a final treatment session. As Plaintiff once again used his session as an opportunity to vent his frustrations and did not report any psychiatric issues or need for further treatment, Jankowitz requested that his record be reviewed by a physician and that Plaintiff be removed from the special treatment roster as she believed he no longer needed the additional mental health treatment he was receiving and was instead misusing his time as a means to complain about prison life. (*Id.* at 6-7). After he was removed from the roster, Plaintiff requested to see her supervisor on February 22, 2017. (*Id.* at 7).

Following this request, Plaintiff was seen by the supervisor, Defendant Goldstein, on April 13, 2017. (*Id.* at 8). Although Plaintiff complained of issues with Jankowitz during that meeting, Dr. Goldstein reported that Plaintiff said he "felt fine" and "denied feeling depressed or anxious," but felt that having the opportunity to speak with someone was helpful. (*Id.* at 8). Although Dr. Goldstein offered Plaintiff a follow-up treatment session in May, the doctor ultimately concluded that Plaintiff "did not require being added [back] to the special needs roster." (*Id.*).

After Plaintiff got into an altercation with another inmate, he was placed into administrative segregation for ninety days. (*Id.*). While on administrative segregation, Plaintiff continued to

3

receive mental health evaluations from the restrictive housing unit's social worker, Samuel Ayettey. (*Id.* at 8-9). Throughout multiple such evaluations during the summer of 2017, Plaintiff complained about being removed from the special needs roster and used his expressed grief over the loss of his son and his son's mother two years previously "as a means to be added" back to the special needs roster, but did not express suicidal ideation, depression, anxiety, or any other clear signs of mental distress. (*Id.* at 9). In his final such evaluation by Ayettey in July 2017, Plaintiff reported that he was "doing well" and had no mental health complaints. (*Id.*). He was thereafter released from administrative segregation. (*Id.*).

On August 21, 2017, Plaintiff was transferred to South Woods State Prison. (*Id.*). Plaintiff again requested to be returned to the special needs roster, but was denied as he did not have a proper diagnosis to support such a designation. (*Id.*). Notwithstanding this denial, Plaintiff continued to receive mental health treatment through sessions with social workers following his transfer, during which he continued to complain about his being removed from the roster, but did not report any serious mental health issues. (*Id.* at 10). Despite being off the roster, Plaintiff continued to receive biweekly mental health sessions, even after being placed in restrictive housing again. (*Id.*). In October 2017, Plaintiff was seen by Dr. Malini Naik, a psychiatrist who ultimately concluded that Plaintiff showed no "symptoms of psychosis" or "depressive symptoms" following an evaluation. (*Id.* at 11).

Plaintiff continued to receive regular mental health sessions with social workers, but also complained that he needed to see a psychiatrist. (*Id.* at 11-13). Plaintiff ultimately was seen by the psychiatrist, Dr. Baum, in March 2018. (*Id.* at 13). Following that appointment, the doctor noted that he saw no signs or symptoms of psychosis or any need for Plaintiff to be returned to the special needs roster. (*Id.*). Plaintiff, however, continued to receive regular mental health sessions

with social workers.  (*Id.*).  On August 21, 2018, Plaintiff was evaluated by a psychologist, Dr. Johns, who also found no symptoms or signs of mental illness sufficient to warrant placement back on the special needs roster.  (*Id.*).  Plaintiff continued to receive treatment, however, through November 2018, when he filed his complaint in this matter asserting that Dr. Goldstein and Ms. Jankowitz were deliberately indifferent to his needs in removing him from the roster and allegedly denying him further treatment.  (*Id.*; *see also* ECF No. 1).

In support of his motion, Defendant Goldstein has provided a certification from a proposed expert, Dr. Joseph V. Penn.  (*Id.* at 14).   Having reviewed Plaintiff's prison mental health records, Dr. Penn concludes that although Plaintiff "may have been dissatisfied with and disputed the adequacy of the treatment provided to him, the records clearly indicate that the decisions made by the mental health professionals . . . were based on appropriate and sound professional judgment." (*Id.*).  Dr. Penn also agrees with Dr. Goldstein and the other psychologists and psychiatrists, opining that there "is no evidence to suggest that any additional mental health evaluation, psychotropic medication treatment, or other mental health service[] was clinically indicated" by Plaintiff's reported symptoms.  (*Id.* at 15).

## II.  DISCUSSION

### A.  Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual dispute is

material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to conclude that the moving party's statement of material facts are undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2-3 (D.N.J. Feb. 14, 2017). Even where the defendants' statement of material

facts is deemed admitted and unopposed, a district court is still required to "satisfy itself that

summary judgment is proper because there are no genuine disputes of material fact and that

[Defendants are] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.*

At 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir.

1990)).


**B.  Analysis**

In his complaint, Plaintiff raised a single claim[2] against Dr. Goldstein – that his

participation in Plaintiff's removal from the special needs roster and Dr. Goldstein's alleged

barring of Plaintiff from further mental health treatment amounted to deliberate indifference to his

psychiatric needs and resulted both in Plaintiff being placed in administrative segregation when he

acted out on his poorly controlled impulses and in Plaintiff suffering.  Defendant Goldstein now

argues that, in light of Plaintiff's mental health records, Plaintiff's claim amounts to little more

than his disagreement with Dr. Goldstein's psychological judgment and that the doctor is therefore

entitled to summary judgment as to Plaintiff's claim.

In order to make out his claim that Defendant Goldstein was deliberately indifferent to his

medical needs, Plaintiff must show both that he suffered from a sufficiently serious medical need

and that Goldstein engaged in actions or omissions that indicate that Goldstein was deliberately

---

[2] As in his motion to dismiss, Dr. Goldstein also asserts that he is entitled to summary judgment
as to any claim Plaintiff may have against him in his supervisory role over Defendant Jankowitz
or other mental health records.  As this Court explained in the order denying Dr. Goldstein's
motion to dismiss, however, the Court construed no such claim against Dr. Goldstein in Plaintiff's
complaint, and Plaintiff has failed to amend or otherwise supplement his complaint to raise such a
claim.  This Court therefore need not and does not address the supervisory liability issue as nothing
in the record of this matter indicates that Plaintiff intended to raise such a claim, and this Court
has repeatedly declined to construe such a claim.

indifferent to that need. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

A medical need is sufficiently serious where it "has been diagnosed as requiring treatment or [is a

need that] is so obvious that a lay person would easily recognize the necessity of a doctor's

attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert*

*denied*, 486 U.S. 1006 (1988).  A defendant's actions or omissions will in turn amount to deliberate

indifference where the defendant "knows of and disregards an excessive risk to inmate health or

safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "'Where

a prisoner has received some medical attention and the dispute is over the adequacy of treatment,

federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law.'"  *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013)

(quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)).

Where a prisoner has received treatment, he may generally therefore not show deliberate

indifference by asserting only his disagreement or dissatisfaction with the treatment he received.

*See Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v.*

*Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228

(D.N.J. 2000).

In his complaint, Plaintiff alleged that he told Dr. Goldstein that he was having serious

mental health issues – the hearing of voices and other such occurrences – and that the doctor

refused him any further mental health treatment.  Plaintiff's prison medical records, however, bear

out neither contention.  The prison records here clearly indicate that Plaintiff's removal from the

special needs roster occurred months before he spoke with Goldstein, and was the direct result of

Plaintiff's treatment plan and repeated statements during treatment sessions indicating that he did

not have any further mental health symptoms.  Although Defendant did uphold the decision to

remove Plaintiff from the special needs roster and did decline to return Plaintiff to that roster, Plaintiff's mental health records further indicate that Dr. Goldstein did not refuse Plaintiff further treatment – instead, the doctor offered Plaintiff follow-up treatment, and, although that offered session was interrupted by Plaintiff's disciplinary issues, Plaintiff continued to receive regular mental health evaluations throughout his time at Northern State Prison and even after his transfer to another facility.  Indeed, those records clearly indicate a virtually unanimous conclusion from treating psychiatrists and psychologists that Plaintiff did not require placement on the roster in 2017 or 2018, nor any further medication at that time.  Notwithstanding these conclusions, Plaintiff was continuously offered mental health sessions throughout his post-February 2017 incarceration at a level roughly equivalent to what he received when he was on the roster.  The record thus clearly indicates that Plaintiff was *not* denied further medical treatment by Defendant Goldstein even if he was denied access to the special needs roster.

Given Plaintiff's extensive mental health records and the treatment he received, as well as the uncontroverted opinion of Dr. Penn that Plaintiff's mental health treatment by Goldstein and other officials was based on appropriate and sound treatment protocols, Plaintiff's claim ultimately boils down to a basic disagreement with the course of treatment he received.  Although Plaintiff believes he should have remained on the roster and possibly received medication, multiple medical officials concluded in their medical judgment that neither course was necessary during the time frame at issue in this matter.  As a Plaintiff's subjective disagreement with a course of treatment reached after appropriate consideration is insufficient to support a claim for deliberate indifference to medical needs, it is clear that Defendant has shown that he is entitled to judgment as a matter of law as to Plaintiff's deliberate indifference claims against him.  *White*, 897 F.2d at 110. Defendant's motion shall be granted, and judgment entered in favor of Defendant Goldstein.

Finally, the Court notes that Plaintiff has filed an application requesting the appointment of counsel in this matter.  (ECF No. 61).  In order to show that the appointment of counsel is warranted, Plaintiff must preliminarily show that he has claims of potential merit before the Court even need address the remaining factors.  *See Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir. 1993).  Here, Plaintiff's sole claim against the only served Defendant is without merit for the reasons set forth above, and Plaintiff has failed to serve the only other remaining Defendant, notwithstanding the fact that the time to do so expired more than two years ago.  Plaintiff has therefore not shown that he has potentially meritorious claims, and his request (ECF No. 61) is denied.

## III. CONCLUSION

For the reasons stated above, this Court **GRANTS** Defendant Goldstein's motion for summary judgment (ECF No. 59) and will enter judgment in favor of Defendant Goldstein.  The Court also **DENIES** Plaintiff's request for the appointment of counsel.  An appropriate order follows.


_s/Susan D. Wigenton_
Hon. Susan D. Wigenton,
United States District Judge

10